UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ADANE TEDLA,<br><br>                  Plaintiff,<br><br>v.<br><br>METROPOLITAN GROUP PROPERTY<br>AND CASUALTY INSURANCE<br>COMPANY,<br><br>                  Defendant. | No. C06-108Z<br><br>ORDER |

This matter comes before the Court on Plaintiff's motion for summary judgment, docket no. 18, and Defendant's motion for summary judgment, docket no. 21. Having reviewed the parties' briefs and declarations in support thereof, the Court enters the following Order.

## BACKGROUND

This matter involves a dispute as to whether MetLife policy no. 5627361281 (the "Auto Policy") provided liability coverage to Jennifer Kim when she caused an accident with Plaintiff Adane Tedla. Docket nos. 18 and 21. There is no dispute as to the relevant facts.[1] The parties disagree only as to how those facts impact coverage under the Auto Policy.

---

[1] In his opposition to Defendant's motion, Plaintiff states that "[t]here is no dispute on the operative facts stated in defendant's brief." Pl.'s Opp., docket no. 25, at 3.

ORDER -1-

1   On January 17, 2003, Jennifer Kim borrowed a 2002 Honda Accord with permission, drove it to downtown Seattle, and caused an accident by colliding with Plaintiff's automobile after failing to yield the right of way. Rankin Decl., docket no. 22, Ex B (Kim Dep. at 58-59), C (Tedla's Compl. for Damages at 61-62). Tedla filed suit against Jennifer in state court. Id. at Ex. C. Jennifer did not appear, and the King County Superior Court entered judgment against her for $161,549.89 plus fees and costs. Id. at Ex D (state-court default judgment).

At the time of the accident, Jennifer Kim lived in a house with, among others, Kyong Kim, Rita Lim, and Woo Kim. Rankin Decl., Ex. B (Kim Dep. at 4, 8). Kyong Kim is Jennifer's step-mother and was the registered owner of the Honda in question. Kyong Kim resided in Jennifer's home. Id. (Kim Dep. at 8). Rita Lim, Jennifer's step-sister and the daughter of Kyong Kim, regularly drove the Honda and lent it to Jennifer on the day of the accident. Id. (Kim Dep. at 8, 15-16). Woo Kim is Jennifer's half-sister. Id. (Kim Dep. at 8). Woo Kim was the named insured on the Auto Policy at issue in this litigation. Rankin Dep., Ex A. The insured vehicle under the Auto Policy was Woo's 2001 Volkswagen. Id.

The Auto Policy lists Woo Kim as the "Named Insured" and the 2001 Volkswagen as the "Insured Vehicle(s)." Id. at Ex. A (policy at 5). The Auto Policy also lists four "Household Drivers": Woo Kim, Rita Lyn [sic], Jennifer Kim, and Andrew Kim. Id. at 6. The relevant coverage provision in the Auto Policy states as follows:

> We will pay damages for bodily injury and property damage to others for which the law holds an *insured* responsible because of an accident which results from the ownership, maintenance or use of a **covered automobile**, a *non-owned automobile* or a **trailer** . . . .

Id. at 13 (bold in original, italics added). There is no dispute that the Honda does not qualify as a "covered automobile" or a "trailer" under the policy. With respect to a "non-owned automobile," an "insured" is defined as follows:

> **"Insured"** means . . . with respect to a **non-owned automobile**, **you** or any **relative**. The operation or use of such vehicle must have been with the permission of, or reasonably believed to have been with the permission of, the

ORDER  -2-

>owner.  The operation or use must also have been within the scope of permission given.

Id. at 12 (emphasis in original).  The parties disagree as to whether Jennifer Kim was using a "non-owned automobile" under the Auto Policy.  The Auto Policy provides the following definition for the term "non-owned automobile":

>**"NON-OWNED AUTOMOBILE" means:**
>
>1. an automobile which is not owned by, furnished to, or made available for regular use to **you** or any resident in **your** household.

Id. at 13 (emphasis in original).  Defendant contends that Jennifer Kim was not using a "non-owned automobile," as defined in the Auto Policy, at the time of the accident.  However, there is no dispute that Jennifer Kim would qualify as an "insured" *if* she was using a "non-owned automobile" because she is a "relative" of Woo Kim (the named insured) and she borrowed the Honda with the permission of Rita Lim.  Thus, the dispositive question as to coverage is whether the Honda used by Jennifer Kim was a "non-owned automobile" under the Auto Policy.

In addition to the scope of the coverage for "non-owned automobiles," the parties disagree as to whether the following exclusion applies:

>**COVERAGE EXCLUSIONS**
>
>We do not cover:
>
>L.  a **non-owned automobile** while used by a **relative** who owns, leases or has available for their regular use, a motor vehicle not described in the Declarations.

Id. at 14 (emphasis in original).  At the time of the accident, Jennifer owned a Mazda 626 that had not been functioning for approximately one year.  Id. at Ex. B (Kim Dep. at 11).  Sometime after the January 17 accident, the Mazda was repossessed.  Id. (Kim Dep. at 12).  The Mazda did not have any insurance coverage.  Id. (Kim Dep. at 21).

//

//

## DISCUSSION

Summary judgment is appropriate when the movant demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). Once the moving party meets its initial responsibility, the burden shifts to the non-moving party to establish that a genuine issue as to any material fact exists. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party must present significant probative evidence tending to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). Evidence submitted by a party opposing summary judgment is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In Washington State, the interpretation of an insurance policy is a question of law. Grange Ins. Co. v. Brosseu, 113 Wn.2d 91, 95 (1989).

In Washington State, the interpretation of an insurance policy is a question of law. Grange Ins. Co. v. Brosseu, 113 Wn.2d 91, 95 (1989). An insurance policy "is construed as a whole, and 'should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" Grange, 113 Wn.2d at 95 (citation omitted). If the language in the contract is clear and unambiguous, it must be enforced as written. Washington Pub. Util. Districts' Utils. Sys. v. Pub. Util. Dist. No. 1, 112 Wn.2d 1, 10, (1989). Courts interpreting insurance policies are generally bound by the

ORDER -4-

definitions provided therein. <u>Overton v. Consl. Ins. Co.</u>, 145 Wn.2d 427 (citing <u>Kitsap County v. Allstate Ins. Co.</u>, 136 Wn.2d 567, 576 (1998)).

In this case, Defendant contends that there is no coverage for Jennifer Kim's use of the Honda under the definition of a "non-owned automobile." Defendant also argues that the subsection L. of the coverage exclusions bars coverage. In opposition, Plaintiff argues that the Court must disregard the defined terms in the Auto Policy because of public policy considerations. Plaintiff also maintains that the exclusion in subsection L. does not apply because Jennifer Kim's Mazda was non-functioning for approximately one year prior to, and at the time of, the accident and was later repossessed.

       1.     <u>"Non-Owned Automobile" Coverage</u>

Defendant argues that the plain language of the Auto Policy does not extend to the circumstances under which Jennifer Kim's accident occurred. The Auto Policy covers insureds for use of a "non-owned automobile," and defines that term as follows:

> **"NON-OWNED AUTOMOBILE" means:**
>
> 1.    an automobile which is not owned by, furnished to, or made available for regular use to **you** or any resident in **your** household.

<u>Id.</u> at 13 (bold in original). Defendant contends that the plain language of this provision limits the scope of "non-owned automobiles" to automobiles that are (1) "not owned by . . . [Woo] or any resident in [Woo's] household" or (2) "not . . . made available for regular use to [Woo] or any resident in [Woo's] household." It is undisputed that the Honda in question was (1) owned by Kyung Kim, a resident of Woo's household, and (2) made available for regular use to Rita Kim, also a resident of Woo's household. <u>See</u> Rankin Decl., Ex B (Kim Dep. at 8, 15-16). Thus, two separate clauses in definition of "non-owned automobile" (the "ownership" and "regular use" clauses) exclude Jennifer Kim's use of the Honda from that definition.

In opposition, Plaintiff concedes that the plain language of the "non-owned automobile" definition does not include the circumstances under which Jennifer Kim used

ORDER   -5-

the Honda on the day of the accident.  However, Plaintiff argues that the Court should deem the definition unenforceable because it violates public policy.  See Mutual of Enumclaw Ins. Co. v. Wiscomb, 97 Wn.2d 203, 210 (1982) ("As a private contractor, the insurer is ordinarily permitted to limit its liability unless inconsistent with public policy"); Mendoza v. Rivera-Chavez, 140 Wn.2d 659, 662-63 (2000) ("'Public policy' is a nebulous term and on the whole, courts are reluctant to hold that a clause in an insurance policy is in violation of public policy," and "it has been held that a contract will not violate public policy unless it is prohibited by statute, condemned by judicial decision, or contrary to the public morals").

Plaintiff relies primarily on Dairyland Insurance Company v. Ward, 83 Wn.2d 353 (1974), in arguing that the Auto Policy definition of "non-owned automobile" has been "condemned by judicial decision."  In Dairyland, the insured lived with his father, who owned an uninsured pick-up.  83 Wn.2d at 354.  The insured borrowed his father's pick-up and caused an accident that killed a pedestrian.  Id.  The insurer refused to defend or indemnify the insured based on the following provisions of the policy:

> V Use of Other Automobiles
>
> If the named Insured is an individual or husband and wife and if during the policy period such named insured, or the spouse of such individual if a resident of the same household, owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy under coverages A, B and C, with respect to said automobile applies with respect to any private passenger automobile subject to the following provisions:
>
> (a) Under coverages A and B the word 'insured' includes (1) the named Insured and spouse provided his actual operation is with the permission of the owner and is within the scope of such permission, and (2) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured (a)(1) above.
>
> (b) *This insuring agreement does not apply*:
>
> (1) *to any automobile owned by or furnished for regular use to either the named Insured or a member of the same household* other than a private chauffeur or domestic servant of such named Insured or spouse;
>
> (2) to any accident arising out of the operation of an automobile sales agency, repair shop, service station, storage garage or public parking place;

ORDER  -6-

>   (3) to any automobile while used in a business or occupation of such named
>   Insured or spouse except a private passenger automobile operated or occupied
>   by such named Insured, spouse, private chauffeur or domestic servant.

Id. at 354-55 (emphasis added).  The insured argued that this provision was ambiguous, and the Washington State Supreme Court agreed.

The Dairyland Court stated that "the proper inquiry is not whether a learned judge or scholar can, with study, comprehend the meaning of an insurance contract, but whether the insurance policy contract would be meaningful to the layman who at his peril may be legally bound or held to understand the nature and extent of its coverage."  Id. at 358.  The Dairyland Court also noted the general rule that "where a clause in an insurance policy is ambiguous, the meaning and construction most favorable to the insured must be applied, even though the insurer may have intended another meaning."  Id.  Ultimately, the Dairyland Court held as follows:

> [T]he above clause [is] ambiguous in a very real sense.  In addition to its confusing structure, the subject clause is sandwiched into the general coverage provisions of respondent's insurance contract.  It is not found in the enumerated exclusionary provisions under the title or caption 'EXCLUSIONS-This policy does not apply'. We think it highly unlikely that a policyholder would, under the facts of the instant case, reasonably believe his insurance so circumscribed so as to preclude liability coverage.[2]

Id. at 358-59.

Plaintiff contends that Dairyland controls in this case because the Auto Policy employs similar language in limiting coverage for "non-owned automobiles."  Plaintiff reasons that the plain, ordinary meaning of a "non-owned vehicle" should apply and that the Auto Policy's definition of that term is improperly "sandwiched" into the policy, as was the exclusion in Dairyland.  Plaintiff moves the Court to conclude, as a matter of law, that the

---

[2] The Dairyland Court also cited the "twofold purpose" of such "use of other automobile" clauses: "(1) to prevent an insured from receiving coverage on all household cars or another uninsured car of the insured by merely purchasing a single policy, and (2) to provide coverage to the insured when engaged in the infrequent use of non-owned vehicles." Id. at 359 (citing R. Keeton, INSURANCE LAW § 4.9 (1971); 12 G. Couch, CYCLOPEDIA OF INSURANCE LAW § 45:238 (2d ed. R. Anderson 1964).

ORDER  -7-

meaning of "non-owned automobile" in the Auto Policy is any automobile that the named *driver* does not own or regularly use.

In response, Defendant contends that Dairyland is distinguishable because of the differences between the policy in that case and the Auto Policy in this case. Defendant also argues that subsequent case law limits Dairyland to narrow facts and demonstrates that the Auto Policy is not ambiguous. Defendant correctly identifies at least two differences between the Dairyland policy and the Auto Policy. First, the Dairyland policy was structured to suggest that the provisions in question provided coverage. In fact, the first paragraph of the "Use of Other Automobiles" section of the Dairyland policy provided coverage, while the second paragraph was clearly an exclusion. The Dairyland Court found this aspect of the policy would confuse an insured into believing that the entire "Use of Other Automobiles" section provide coverage without exclusions. Here, the Auto Policy provides coverage for non-owned automobiles in the "Coverage Provided" section. The limitation, to the extent one exists, is created by the *definition* of "non-owned automobiles." The Auto Policy does not misleadingly list a coverage exclusion under the heading of a coverage provision, as appeared to be the case in Dairyand. Second, and more importantly, the limitation in this case is found in a defined term in the Auto Policy. To aid in understandability, the Auto Policy places all defined terms in bold, including the term "non-owned automobile." When interpreting insurance policies, Washington State courts "should be bound by the definitions provided therein." Overton v. Consl. Ins. Co., 145 Wn.2d 417, 427 (2002) (citing Kitsap County v. Allstate Ins. Co., 136 Wash.2d 567, 576(1998)). Unlike the Dairyland policy, the insurer in this case took the extra step of defining the term "non-owned automobiles" in a way that narrows the definition to vehicles that are not owned or regularly used by other persons in the driver's household. This is a very significant distinction.

In addition to relying on the obvious differences between the Dairyland and Auto Policy provisions, Defendant also argues that his case is analogous to more recent decisions in which courts have found such policy provisions unambiguous. In Grange Insurance Association v. MacKenzie, the Washington State Supreme Court examined a "Use of Other Automobiles" identical to that in Dairyland and concluded that it was not ambiguous under separate facts. 103 Wn.2d 708, 711-13 (1985). The MacKenzie Court held that the Dairyland decision was narrow because the ambiguity was based on the question of whether an isolated use was a "regular use." The MacKenzie Court found that the use in that case was clearly "regular" and, therefore, that there was no ambiguity. Id. at 711. See also Progressive Northwestern Ins. Co. v. Hoverter, 65 Wn. App. 872, 877-78 (1992) (holding that a virtually identical definition of "non-owned car" is not ambiguous).[3] Here, the limited definition of "non-owned automobile" precludes coverage as to Jennifer Kim's use *both* because the Honda was regularly used by Rita Lim *and* because the Honda was owned by Kyong Kim. Both Rita and Kyong resided with Jennifer Kim.

The Court finds Plaintiff's contention that the "non-owned automobile" definition in this case is void as a matter of public policy unpersuasive. There are significant differences between the structure of the policy in Dairyland and the Auto Policy here. Moreover, the Auto Policy uses a specifically defined term, which was not at issue in Dairyland, and Washington State law binds courts to apply defined terms in insurance policies. Overton, 145 Wn.2d at 427. The plain language of the Auto Policy at issue in this case does not cover Jennifer Kim's use of the Honda on the day of the accident because the Honda was owned by Kyong Kim and regularly used by Rita Lim, who both resided in Jennifer's home. Accordingly, the Court DENIES Plaintiff's motion for summary judgment, docket no. 18,

---

[3] Although Hoverter appears to be directly on point, Plaintiff argues that it should carry no weight because it does not discuss the Dairyland decision and it was issued by the Court of Appeals, which has no authority to overrule the Washington State Supreme Court's decision in Dairyland.

ORDER  -9-

and GRANTS Defendant's motion for summary judgment, docket no. 21, on the grounds that the Auto Policy provided no coverage for Jennifer Kim's use of the Honda.

### 2. Exclusion L. in the Auto Policy

Defendant also contends that paragraph L. of the "Coverage Exclusions" section of the Auto Policy applies to Jennifer Kim's use of the Honda and precludes coverage. The paragraph in question states as follows:

**COVERAGE EXCLUSIONS**

We do not cover:

L. a **non-owned automobile** while used by *a relative who owns*, leases or has available for their regular use, *a motor vehicle not described in the Declarations*.

Id. at 14 (bold in original, italics added). There is no dispute that, at the time of the accident, Jennifer Kim owned a vehicle "not described in the Declarations," which was not functioning and had not been functioning for approximately one year. Defendant contends that the plain language of this exclusion applies to Jennifer Kim because she owned a motor vehicle. In opposition, Plaintiff argues that the term "owns" is ambiguous. Plaintiff contends that an insured could reasonably believe the term "owns" does not apply to Jennifer Kim's situation here, where she had not driven the Mazda for approximately one year before the accident and the Mazda was inoperable. Plaintiff also maintains that Jennifer Kim did not actually "own" the Mazda because the secured creditor that financed her purchase of the Mazda ultimately repossessed the Mazda after the accident. Finally, Plaintiff relies on Farmers Ins. Co. v. USF&G Co., 13 Wn. App. 836 (1975). In Farmers, the Court of Appeals questioned whether an "ownership, maintenance, or use" clause in an auto-insurance policy that required the "permission of the owner" applied where the driver was unaware that he was driving without permission. 13 Wn. App. at 837-38. The insurer argued that "owner" meant the person who had title, not the person who had possession of the vehicle. Id. at 839. The Farmers Court found the term "owner" ambiguous as used in that particular policy,

ORDER  -10-

construed it against the insurer, and held that "owner" included someone in possession of the vehicle who the driver reasonably believes to be the owner. Id. at 839. The Farmers Court did not analyze the term "owns" in a context at all similar to the Auto Policy, and did not hold that "owner" is universally ambiguous. The Farmers opinion is of no help in analyzing the issue before this Court.

Under Washington State law, "[u]ndefined terms in an insurance contract must be given their 'plain, ordinary, and popular' meaning." Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wn.2d 869, 877 (1990) (citation omitted). "To determine the ordinary meaning of an undefined term, [Washington State] courts look to standard English language dictionaries." Id. The applicable definition of "own" in the standard English language dictionary is as follows: "1. to have or hold as property or appurtenance: have a rightful title to, whether legal or natural: possess." Webster's Third New International Dictionary 1612 (Unabridged 1981). Until the Mazda was repossessed *after* the accident, Jennifer Kim had possession and control of the vehicle, whether she chose to repair it and drive it or not. Jennifer Kim "owned" the Mazda. Paragraph L. is clear and unambiguous; the exclusion applies in this case. Accordingly, the Court GRANTS summary judgment in favor of Defendant for this reason as well.

    3.    <u>Defendant's Motion as to Plaintiff's Negligence and Bad Faith Claims</u>

Defendant also moves to dismiss Plaintiff's negligence and bad faith claims on the grounds that Plaintiff does not have standing to bring such claims. Def.'s Mot., docket no. 21, at 14-18. In his opposition brief, Plaintiff states that "[t]hose allegations are hereby withdrawn." Pl.'s Opp., docket no. 25, at 14. The Court considers Plaintiff's withdrawal of the allegations as a concession that Defendant's motion has merit. The Court GRANTS Defendant's motion for summary judgment dismissal of the negligence and bad faith claims.

ORDER -11-

## CONCLUSION

The plain language of the Auto Policy does not cover Jennifer Kim's use of the Honda on the day of the accident because it was owned by, and regularly used by, members of Jennifer Kim's residence. Plaintiff's contention that the Auto Policy language limiting coverage under such circumstances is void as a matter of public policy is without merit. The Court also concludes that Defendant is entitled to summary judgment under subsection L. of the Auto Policy exclusions because Jennifer Kim owned an automobile at the time of the accident. Finally, the Court considers Plaintiff's withdrawal of the negligence and bad faith allegations as a concession that Defendant's motion has merit as to those claims. Accordingly, the Court GRANTS Defendant's motion for summary judgment as to the breach of contract, negligence, and bad faith claims, docket no. 21. The Court DENIES Plaintiff's motion for summary judgment, docket no. 18.

IT IS SO ORDERED.

DATED this 8th day of September, 2006.

Thomas S. Zilly
United States District Judge

ORDER  -12-